672 So.2d 618 (1996)
CITY OF NEW SMYRNA BEACH, Appellant,
v.
ANDOVER DEVELOPMENT CORPORATION, etc, Appellee.
No. 95-662.
District Court of Appeal of Florida, Fifth District.
April 26, 1996.
*619 Thomas G. Pelham and Rebecca A. O'Hara of Apgar, Pelham, Pfeiffer & Theriaque, Tallahassee, for Appellant.
S. LaRue Williams of Kinsey, Vincent, Pyle, P.A., Daytona Beach, for Appellee.
Clay Henderson of Clay Henderson, P.A., New Smyrna Beach, Amicus Curiae, Oscar B. Peatross, Jr., and North Beach Neighborhood Association, Inc.
HARRIS, Judge.
The City of New Smyrna Beach appeals the trial court's order granting Inlet Joint Venture's[1] motion to enforce judgment. We reverse.
Prior to 1970, the property lying beneath the present project which is the subject of this litigation was zoned R-1 which permitted single family residences only. Then the city enacted Zoning Ordinance No. 797 which created a special classification within the zoning *620 code known as a Residential Resort Planned Unit Development. (R-R PUD).
The purpose of this newly added zoning option was for "the benefits of efficiency, economy, and flexibility of large-scale unified development...." But unlike normal zoning classifications, it was the approved development plan, rather than peculiar attributes of the land itself, that served as the basis for permitting development under this classification. Indeed, Ordinance No. 797 specifically provides:
31.02(c). If the outline development plan is approved, the City Commission shall amend the zoning map to show the R-R PUD District. If the outline plan is approved with modifications, the City Commission shall not amend the zoning map until the appellant has filed with the City Commission written consent to the plan as modified. No building permit may be issued for any development until the final plans have been approved by the City Commission under the provisions provided in the following sections.
It is apparent, therefore, that a specific plan for the Inlet project had been finally approved by the City Commission before and as a condition of enacting its Ordinance No. 808, which "rezoned" the subject property to R-R PUD. This approved plan became an integral part of the R-R PUD zone; there is no R-R PUD zoning classification separate and distinct from a previously approved specific project plan.
It is important to emphasize the distinction between a PUD classification and the normal zoning districts. Unlike a normal construction project which is designed to fit within the fixed parameters (setbacks, maximum lot coverage, height limitations, etc.) of a normal zoning classification, the PUD concept is flexible and permits the developer to present a plan covering a large tract (fifty-five acres in this case) which is unique and which meets the developer's concept of the best use of the particular area. The developer may suggest high-rise buildings in order to permit greater open space. But in any event, the height of the buildings must be in harmony with the rest of the proposed development and the surrounding area. The plan submitted incorporates the developer's recommendation as to what the setbacks, the percentage of open space, the height of buildings, etc. should be and, once accepted by the governmental agency, these recommendations become fixed as the PUD classification is molded over and around the approved plan. The PUD classification, therefore, although flexible in concept, becomes rigid in application.
And because of this distinction, unlike a normal zoning classification, there remains no "unused" development authority in the PUD. For example, if one builds a home twenty-five feet high in a residential zone that permits thirty-five foot structures, such owner may expect to be able to "add on" at a later date up to the height limitation. But once a PUD is approved, there remains no unused authority. Therefore, if the plan is to be subsequently amended, the PUD classification, by necessity, must also be amended.[2] In order to justify such amendment, the plan as modified must remain compatible with the balance of the project and the surrounding area. It should be the type of amendment, taking into account the changing conditions, that would have been approved in the first instance.
In the present case, after the developer had obtained its project approval and the accompanying rezoning, the voters of the City of New Smyrna Beach attempted by referendum to "undo" that which the City Commission had done. They repealed the R-R PUD zoning classification. In Andover Development Corp. v. City of New Smyrna Beach, 328 So.2d 231 (Fla. 1st DCA 1976), the court determined that the use of a referendum *621 for this purpose violated the due process right of the developer and held:
The instant zoning ordinance initiated by the citizens of New Smyrna Beach was in substantial part motivated and directed to the tract of land owned by Andover. The objective was to overrule the fact-finding of the planning commission and its function, and the administrative decision of the city commission. As to Andover's tract, the purported action of the citizens of New Smyrna Beach by the procedure of initiative and referendum violates the basic requisites of constitutional due process and thus is void.
Id. at 238 (emphasis added).
In effect, the Andover court held that citizens may not by initiative and referendum prevent the development of a project previously approved by the City Commission. The Andover court did not declare void the citizens' initiative which repealed Ordinance 797 in relation to any property or project other than the Andover project which had been previously approved. The court required that a building permit for "Phase 1" be approved pursuant to "the City's valid" R-R PUD classificationvalid, at least, for the then approved project.
On remand, the trial court found that:
... Ordinance 797, being the resort-residential plan unit development ordinance in effect at the time of the said referendum in the City of New Smyrna Beach, is in full force and effect as to the subject property.[3]
The court finds that the City of New Smyrna Beach, its official bodies, officials and employees, are equitably estopped to prevent the development of the Plaintiff's property, the subject of these actions, in accordance with the ordinance aforesaid and the Plaintiff's final development plan as filed in evidence herein, and as previously filed with the said City of New Smyrna Beach. The City of New Smyrna Beach is required to approve Andover's said final development plan, phase one. (emphasis added)
The City complied with this judgment entered on February 7, 1977 and the development commenced. However, some eighteen years later, Andover sought to amend its previously approved project by substantially increasing the height of the buildings (from twenty to twenty-nine stories) and by relocating certain of the buildings because of the subsequently enacted Coastal Construction Control Line.
When the City failed to approve the amendment to permit the twenty-nine-story buildings, Andover went back into court to "enforce" the trial court's 1977 judgment. The trial court granted Andover's motion and ordered the City to permit the orderly development of the property in accordance with Ordinance 797. With this provision, we have no dispute. That is the law of this case. However, the court went on to state:
There are no height restrictions which apply to the Inlet under Ordinance 797, the current Comprehensive Plan nor the existing Land Development Regulations and the City of New Smyrna Beach is hereby equitably estopped from imposition of any height limitation upon building "F" as presently represented in Inlet Joint Venture's "revised Second Amended Final Development Plan."
Here, the court was in error. Although Ordinance 797 does not impose a specific fixed height limitation in the R-R PUD classification, a height limitation is imposed pursuant to said ordinance because it is set by the development plan submitted by the developer and accepted by the City. The approved plan becomes part and parcel of the R-R PUD zone. This is evident in Ordinance 797 when it states that all but "minor changes in the ... height of buildings and structures" must be approved by the City Commission. It is not urged herein, nor did the trial court find, that increasing the height from twenty to twenty-nine stories was a "minor" change.
There is an amendment process contained within Ordinance 797 and there is an avenue *622 for appropriate relief if amendments are improperly denied. Enforcement of an eighteen-year-old judgment which required the City to issue a permit to develop a specific, previously approved plan, however, should not be used as a short cut to obtain an amendment of that plan. As Judge Sharp observed in Elbadramany v. Oceans Four Condominium Association, Inc., 532 So.2d 64 (Fla. 5th DCA 1988), "a court does not have the power to impose upon a party a new duty not previously adjudicated in the final judgment."
REVERSED.
DAUKSCH and SHARP, W., JJ., concur.
NOTES
[1] Inlet Joint Venture is the successor in interest to Andover. The Volusia County Circuit Court in 1981 held (Civ.Ct. #81-3731-CA-01-D) that Joint Venture retained the same development rights that Andover had.
[2] Since a PUD "zone" is not a fixed area on the zoning map but instead is a zoning concept granted only to an approved, large project (and then shown on the zoning map), is the amendment of such a "zone" the "formation of a [new] general rule of policy" as it relates to the affected area? And since we are talking about the "rezoning" of a fifty-five acre parcel that will affect many residents of the project who may have purchased in reliance on the original plans, will the City Commission's decision be legislative or quasi-judicial? See Board of County Commissioners of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993).
[3] Although the trial court merely used the term "property," it is clear that it intended to enforce the holding of the Andover appellate court. It is also clear that the Andover appellate court did not distinguish between the real property and the approved project.