**Elizabeth BAILEY, Robert Turino, Judy Ziegler and Dan Hoffman, Appellants,**

v.

**ZONING BOARD OF ADJUSTMENT of the City of Philadelphia, the City of Philadelphia, and James B. Kravitz/Shawmont Development, Inc.**

Commonwealth Court of Pennsylvania.

Argued June 4, 2001.

Decided July 16, 2001.

John J. Hagarty, Philadelphia, for appellants.

David Zalesne, Philadelphia, for appellees.

Before COLINS, Judge, McGINLEY, Judge, FLAHERTY, Senior Judge.

FLAHERTY, *Senior Judge.*

Objectors, Elizabeth Bailey, Robert Turino, Judy Ziegler and Dan Hoffman, appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) which affirmed the issuance of a zoning and use registration permit by the City of Philadelphia Department of Licensing & Inspections (L & I) to James B. Kravitz of Shawmont Development, Inc. (Developer). We affirm.

Developer is the owner of 18 acres of property known as Hunters Pointe located in the Roxborough community of the City of Philadelphia. Since 1972, the property has been designated as an RC–6 residential district under the Philadelphia Zoning Code (Code), which is a special zoning district created for planned developments.[1] In 1985, the City Planning Commission (Commission) recommended and City Council (Council) approved a master plan (1985 plan) for the property.[2]

On April 27, 2000, D.D. Winokur & Associates, Inc., an engineering firm hired by Developer, submitted to the Commission a detailed engineering plan (Winokur plan) for the development of Hunters Pointe. The Commission reviewed and approved the Winokur plan as consistent with the

---

1. Planned developments "encourage multiple use development on large tracts of land in accordance with a plan of development." § 14–226(1) of the Code. Said plan (master plan) must layout the entire tract showing, i.e., boundaries, maximum gross floor area, dimension and height of proposed structures, and the size and location of parking and loading areas. § 14–226(2). No zoning or building permit may be obtained which is not in accord with the approved development plan (master plan). § 14–226(1).

2. The first plan approved by Council was the "1972 plan".

1985 plan. Based on that approval, L & I issued a zoning permit to Developer.

Objectors filed an appeal to the Zoning Board of Philadelphia (Board) contesting the issuance of the permit. On July 14, 2000, Developer filed a petition with the trial court seeking to quash the appeal to the Board. By order dated July 27, 2000, the trial court assumed jurisdiction of the appeal pending before the Board and directed Objectors to provide the trial court with a statement of the bases for their appeal. Thereafter, Objectors raised 14 separate bases for appeal and later filed an additional statement of basis for appeal.

The trial court then took evidence and issued an order on November 13, 2000 affirming L & I's issuance of the building permit. The trial court found that the Commission which is charged with interpreting and applying the RC 6 Ordinance concluded that the Winokur plan was in accord with the 1985 plan, and in the trial court's own view the Winokur plan and the 1985 plan were identical with respect to location of structures, parking and open spaces.

■ On appeal, Objectors argue that the trial court erred in disregarding evidence which proved that the Winokur plan is not in compliance with and is not the same as the 1985 plan and that, in accordance with this court's decision in *Bailey v. Zoning Board of Adjustment of the City of Philadelphia,* (*Bailey I* ) 742 A.2d 247 (Pa.Cmwlth.1999), *petition for allowance of appeal granted,* 564 Pa. 715, 764 A.2d 1072 (2000), any changes to the master plan, no matter how minor, must be approved by Council.[3]

Before addressing Objector's arguments, we will first review the facts of *Bailey I,* which involved the same parties presently before us. In *Bailey I,* this court observed that the 1985 plan contemplated ten buildings containing 202 apartments for Hunters Pointe. Developer sought permission to deviate from the 1985 plan from the Executive Director of the Commission. The modification request sought to construct six buildings containing 204 apartments which required an increase in gross total floor area of 2,400 feet and the moving of several buildings. Determining that Developer's request constituted a minor modification to the 1985 plan, the Executive Director approved the modification without Commission or Council approval concluding that under Section 14–226(2)(b) it had the authority to approve such change.[4] Developer thereafter received a zoning and use registration per-

---

3. Where the trial court takes evidence, it hears the matter de novo, and our review is limited to determining whether the trial court committed an abuse of discretion or an error of law. *Rouse/Chamberlin, Inc. v. Board of Supervisors of Charlestown Twp.,* 94 Pa. Cmwlth. 413, 504 A.2d 375 (1986).

4. Section 14–226(2)(b) of the Code provides: At any time after final adoption, the owner of the property or his authorized agent, may apply to the City Planning Commission for changes in the approved development plan; provided, that at the time said change is requested, that an amended plan is submitted to the City Planning Commission and the City Council. The City Planning Commission shall submit in writing to the Coun-

cil its recommendation regarding the amendments. Within 45 days of its receiving the written recommendation from the Commission, the Council shall reply in writing informing the Commission as to the action the Council has taken in approving, disapproving, amending or deferring the change. If the Council does not reply in writing to the Commission within the aforementioned 45–day period, Council's approval will be presumed. And further provided, that no change shall be approved by the City Planning Commission which is contrary to the criteria set forth in this Chapter, or which permits a use not provided in this chapter.

mit from L & I. Objectors took an appeal to the Board which determined that it did not have jurisdiction to review a decision of the Executive Director. The trial court affirmed. The trial court also determined that it had jurisdiction to review the decision of the Executive Director and substituted itself as the proper forum for the appeal. Agreeing with the Executive Director's determination that Developer's changes were minor and that minor modifications to the plan could be made without Council approval, the trial court denied Objectors appeal.

In *Bailey I,* we determined that the Code did not authorize the Executive Director to make changes to the master plan. Such power is vested in Council.

> While we understand that projects of this size necessarily need minor modifications once final approvals are made, nonetheless, officials only have the power given to them by authorizing legislation. Nothing in the Code gives the Executive Director or, for that matter, the Planning Commission, the ability to make changes to City Council's approved master plan; City Council has retained that authority. In fact, the intent behind the enactment of Section 14–226(2)(b) appears to place changes to original master plans on the fast track as it is because everything is done in writing, without hearings, and there is a deemed approval if City Council does not act.

*Id.* at 250.

█ In this case, Objectors argue that the Winokur plan deviates from the 1985 plan and that in accordance with *Bailey I,* absent Council's approval of such changes, L & I erred in issuing permits to Developer. We disagree with Objectors that the two plans differ such that Council approval was necessary.

Although the trial court determined that the Winokur plan and 1985 plan are identical, Objectors maintain that in reaching its conclusion the trial court improperly disregarded uncontroverted expert testimony. Specifically, Objectors maintain that evidence produced by them proved that the Winokur plan and the 1985 plan are not the same with respect to Hillside Avenue, property boundaries and set back requirements.

With respect to Hillside Avenue, Objectors offered the testimony of Joel S. Cirello, who testified that Hillside Avenue is not shown on the 1985 plan but is indicated on the Winokur plan. The history behind Hillside Avenue reveals that City Council had enacted an ordinance seeking to strike Hillside Avenue as a road. However, the requirements of the ordinance were not met and the ordinance purporting to close Hillside Avenue lapsed in 1973.

The trial court determined that the legal status of Hillside Avenue has not changed from 1973, when the ordinance to close Hillside Avenue lapsed to the time the 1985 plan was approved to the time the Winokur plan was filed in 2000. "The status of Hillside Avenue was a matter of public record, known to the Commission and City Council when the 1985 Plan was approved, and the 1985 Plan incorporated a survey prepared by Vincent F. Collier, surveyor and regulator in the Ninth District, dated June 8, 1973 (the 'Collier Survey'), showing Hillside Avenue on the City Plan." (Trial court opinion at p. 6.) Further, the trial court observed that Council did not condition the issuance of a permit on striking Hillside Avenue from the City Plan and the Commission therefore had no authority to reject the Winokur plan.

█ We agree with the trial court that because the legal status of Hillside Avenue, a paper street, is the same in the 1985 Plan as it is in the Winokur Plan, the

plans are the same.[5] Although Objectors' expert testified that the plans differ, the trial court did not credit this testimony. Credibility is a determination to be made by the fact finder, here the trial court, and is not a proper subject for appellate review. *Nassif v. Board of Adjustment of the City of Pittsburgh*, 498 Pa. 530, 448 A.2d 535 (1982). Here, the testimony of Daniel Winokur, the preparer of the Winokur plan, and Developer's other experts was determined by the trial court to be credible that the status of Hillside Avenue is the same in the Winokur plan as it is in the 1985 plan.

Next Objectors maintain that, according to their experts, the property boundary in the two plans is not the same. The trial court specifically found however that "the boundary of the Hunters Pointe property shown on the Winokur Plan is the same boundary described in the 1972 Plan, and the same boundary shown in all of the public records made in the interim." (Trial court opinion at p. 6.) This finding is supported by the testimony of Mr. Winokur, who stated that the property did not change from 1972 until the present time. (R.R. at 171a.) Again, although Objectors' experts may have opined differently, the trial court is the determiner of credibility and was free to reject the testimony of Objectors' experts.

Finally, Objectors argue that the Winokur plan does not comply with the setback requirement imposed where, as here, an RC–6 zoning district abuts an R–4 district. We conclude that the trial court aptly addressed this issue and adopt the analysis employed by Judge Wolf:

Appellants' [Objectors'] challenges with respect to section 14–226(4)(g) of the Zoning Code, describing the set-back requirements for an RC–6 plan, fail for several reasons. First, the 1985 Plan that placed the buildings 25 feet from the zoning line and on the property line was approved by an ordinance of City Council.[3]

3. Even if section 14–107 (governing set-back requirements for "mixed districts") applied, City Council was entitled to disregard that section and enact a property-specific ordinance approving the 1985 Plan, and this Court is required to give effect to the specific, later-in-time ordinance over a general ordinance. Statutory Construction Act, 1 Pa. C.S.A. §§ 1936; *Purdy v. Zoning Hearing Board of Easttown Tp.*, 161 Pa.Cmwlth. 386, 391, 636 A.2d 1306, 1308 (1994). Once City Council approved the placement of the buildings at the property line, the Planning Commission had no authority to "refuse" that placement.

Second, the Planning Commission did not consider the set-back provisions of section 14–107 to be applicable to the Hunters Pointe property at Hillside Avenue. Section 14–226[4](g) states the general rule that for an RC–6 district, **"there shall be no required minimum set-back,"** subject to the set-back requirements for a mixed district. The Planing Commission interpreted the set-back requirement as a function of the *front yard* of a property, based on the definitions of the terms (a) set-back, as "the distance required between the street line and *the building set-back line* " (§ 14–102(83)), and (b) building set-back line, as *"the rear line of the minimum required front yard,* as herein designated for each district" (§ 14–102(16)). As the front yard side of

5. A paper street refers to a street indicated on a planning or zoning map of a municipality or on other publicly recorded documents. *Tobin v. Radnor Township Board of Commissioners*, 142 Pa.Cmwlth. 567, 597 A.2d 1258 (1991).

"Where such a street has never been opened by the municipality or used by the public, it has no existence except on paper, and is therefore referred to as a 'paper street.' " *Id.* at 1260, n. 1.

Hunters Pointe runs along Shawmont Avenue (i.e., 201–299 Shawmont Avenue), not Hillside Avenue, the set-back provisions of the Code are inapplicable.

Fourth, as a matter of law, Hillside Avenue is not a "street" as defined in section 14–107(90) of the Zoning Code, for purposes of the set-back requirements. Although confirmed on the City Plan, Hillside Avenue is unpaved and unimproved, and the City of Philadelphia has shown a clear and unequivocal intent **not** to use Hillside Avenue as a means of vehicular traffic and/or pedestrian traffic. City Council passed the Hillside Avenue Ordinance authorizing the striking of Hillside Avenue in 1972, and passed the ordinance approving the 1985 Plan for Hunters Pointe without regard to Hillside Avenue. Moreover, Shawmont confirmed that there is no need or intent to improve Hillside Avenue as part of the Hunters Pointe development, and that the area is to remain as part of the open space allocated to the RC–6 development.

(Trial court opinion at p. 8–9.) (Emphasis in original).

In accordance with the above, because the Winokur plan and the 1985 plan are the same, the order of the trial court is affirmed.

### ORDER

Now, July 16, 2001, the order of the Court of Common Pleas of Philadelphia County, dated November 13, 2000 at July Term 2000, No. 3443, is affirmed.