Chong KANG and Richard Baumbach, Appellants,

v.

SUPERVISORS OF TOWNSHIP OF SPRING and Spring Ridge Land Development Company.

Commonwealth Court of Pennsylvania.

Argued April 2, 2001.

Decided May 4, 2001.

hotel with an accessory restaurant in the Spring Ridge Planned Residential Development (Spring Ridge PRD).[1] We are faced here with a PRD Ordinance that appears to sanction two concurrent layers of zoning for the same parcel: the PRD zoning and that of the original zoning district.

Specifically, the Board granted a conditional use application for the hotel and accessory restaurant because, even though those uses were not listed as permitted uses in the PRD Ordinance, they were permitted as conditional uses in the former, underlying zoning district. We conclude, however, that the Board erred in granting Spring Ridge's conditional use application because, in doing so, it essentially permitted Spring Ridge to effectively amend the PRD plan via a subsequent application for conditional use. Thus, for the reasons that follow, we reverse.

Spring Ridge owns approximately 17.48 acres in the 576–acre Spring Ridge PRD. On November 22, 1999, Spring Ridge filed a conditional use application with the Board seeking permission to construct a "Courtyard by Marriott" hotel (133 rooms) and an accessory restaurant (40 persons) on a 3.6–acre parcel in the Spring Ridge PRD.

After reviewing Spring Ridge's application and plan, the planning commission recommended approval as a conditional use. On March 27, 2000, the Board issued a decision granting Spring Ridge's application with conditions. The background and reasoning of the Board's decision is as follows.

The property is located in the Spring Ridge PRD, established in 1987 under the

Brett A. Huckabee, Wyomissing, for appellants.

Norman E. Dettra, Wyomissing and J. Kitridge Fegley, Reading, for appellees.

Before McGINLEY, Judge, SMITH, Judge and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Chong Kang and Richard Baumbach (collectively, Residents) appeal from the August 17, 2000 order of Court of Common Pleas of Berks County (trial court) that denied and dismissed their appeal of the decision of the Spring Township Board of Supervisors (Board) to grant a conditional use to Spring Ridge Land Development Company (Spring Ridge) to construct a

1. Kang is a resident of Spring Township and is employed in the hospitality business.
Baumbach resides in the Spring Ridge PRD.

Township of Spring Planned Residential Development Ordinance of 1987 (PRD Ordinance).[2] The Board noted that the "underlying" zoning district of the parcel is the planned office/business (PO/B) district, established under Section 314 of the Township of Spring's Zoning Ordinance (Zoning Ordinance).[3] In addition, it specifically noted that the acreage designated for the project is bound on the south by the Park Road Extension and on the east by the Pennsylvania State University, Berks Campus. (Board's Finding of Fact "F.F." 4; 41a.)

The Board found that hotel and restaurant facilities are not permitted uses in a PRD under the PRD Ordinance, but are permitted as conditional uses in the PO/B district, subject to compliance with certain sections of the Zoning Ordinance.[4,5] The Board resolved the conflict between the Zoning and PRD Ordinances via its interpretation of Section 301 of the PRD Ordinance.

Section 301 of the PRD Ordinance provides, in pertinent part, that "the applicant shall have the right to uses permitted in this PRD Ordinance *and* to uses permitted by right, by condition, and by special ex-

ception in accordance with design requirements and regulations prescribed for those uses in the zoning district within which the applicant is submitting an application for a PRD." (emphasis added). The Board interpreted that section to mean that the applicant has the right to both the uses permitted in the PRD Ordinance *and* to those permitted as conditional uses in the underlying zoning district. (F.F. No. 8; R.R. 41–42a.)

Section 502 of the PRD Ordinance sets forth permitted uses in PRDs and neither hotels nor restaurants are listed. The parties, however, presumably thought that Section 502 of the PRD Ordinance could have been applicable and proceeded to tailor their evidence to satisfy the criteria of that section. In addition, both the Board and the trial court ruled on its applicability. Because it comprised such a large part of their reasoning, we will briefly describe it.

Section 502(g) of the PRD Ordinance provides that one permitted use in a PRD is "[r]etail stores, shops or service establishments for the conducting of any retail business or service *serving only the [PRD]*." [6] (emphasis added). The footnote to Section 502 provides that

---

**2.** Meridian Properties, Inc. was the applicant for the 1987 Spring Ridge PRD.

**3.** Because we believe that the PRD zoning replaced the original zoning designation, we note that the more accurate statement would be that the parcel was *formerly* located in a PO/B district and is *currently* located in the PRD.

**4.** In the underlying PO/B zoning district, hotels, including restaurants, are permitted as conditional uses pursuant to Section 314.D.5 of the Zoning Ordinance.

**5.** Although neither the Board nor the parties raised this possibility, we note that it is unclear whether the proposed hotel use was actually approved as part of the *original* PRD Plan. Spring Ridge's Tentative Plan for the Spring Ridge PRD, which the Board ap-

proved on December 14, 1987 (R.R. 576–591a), indicates as follows:

> A mixed use (a combination of office, retail and *hotel*) area is proposed for an area located along the northwestern edge of the site. This site would provide excellent visibility and proximity to the proposed Park Road extension, making these kinds of uses most appropriate for the location.

(Spring Ridge Tentative Plan Submission, Original Record "O.R.," Exhibit 4 at p. 18) (emphasis added). In addition, we note that there appears to be an existing hotel in the Spring Ridge PRD. (R.R. 617a, 628a.) We do not know, however, how the hotel became part of the PRD.

**6.** In addition to retail stores, shops and service establishments serving only the PRD, permitted uses under Section 502 of the PRD

[t]he inclusion and location of non-residential uses shall require the approval of the governing body. No commercial development in excess of the amount demonstrated by a market analysis shall be permitted, but *under no condition will commercial uses exceed five (5%) percent of the gross area of the [PRD]*. (emphasis added).

The Board found the entire PRD Ordinance to be inapplicable, reasoning that, "[a]lthough the land is located in the Spring Ridge PRD, not all developments in the District where it [the proposed hotel/restaurant use] is allowed are [PRDs], subject to the PRD regulations." (Board's Decision at 14; R.R. 52a.) As for the conditions set forth in the note to Section 502, the Board concluded that they applied solely to the specifically enumerated retail/service type of commercial uses set forth in Section 502, which does not include hotels or restaurants.

In the event that the conditions set forth in Section 502 did apply, the Board concluded that Spring Ridge had nonetheless satisfied them. Specifically, the Board concluded that Spring Ridge's evidence and testimony, including that of J. Edward Watson, III, franchisee for Courtyard by Marriott Hotels in the Reading/Berks

County area, constituted the "market analysis" required to substantiate the need for a hotel and accessory restaurant of the type proposed. (Board's Conclusion of Law No. 10; R.R. 57a.) Further, it stated that "[i]t is the opinion of the Board that this use is not even a 'commercial use' of the character restricted by the PRD Ordinance. Historically, the [Board] has defined 'commercial' as '[t]he exchange or buying and selling of commodities.'" (Board's Decision at 14.)

On April 25, 2000, the Residents appealed to the trial court, which dismissed their appeal on August 17, 2000 without taking any evidence. Their timely appeal to this Court followed.[7]

Contrary to the parties' representations and the Board's resolution of the case, the issue essentially before us is whether the Board erred in determining that the former zoning classification of the parcel was still applicable thereby allowing Spring Ridge to circumvent the PRD Ordinance via a conditional use application based on the former zoning designation.[8] We are compelled to conclude that the Board erred in granting Spring Ridge's conditional use application because, in doing so, it erroneously permitted Spring Ridge to effectively amend the final PRD plan via a

Ordinance include: single-family detached dwellings, single-family semi-detached dwellings, two-family detached dwellings, townhouses, quadraplexes, garden apartments, professional or business offices, schools, nursery schools, day care centers, churches, community activity centers, nursing and retirement homes, banks and savings and loans association. (Original Record "O.R.," Exhibit 3.)

7. Where, as here, the trial court took no additional evidence, we are limited to determining whether the governing body committed an error of law or an abuse of discretion. *Herr v. Lancaster County Planning Comm'n*, 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993). "[T]he governing body abuses its discretion when its

findings of fact are not supported by substantial evidence." *Id.* at 167 (citing *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983)).

8. The issues as presented were: (1) whether the Board erred in determining that the restrictions found in Section 502 of the PRD Ordinance were not applicable to the property; and, (2) if Section 502's restrictions were applicable, whether the Board erred in determining that they were satisfied. Because the Board and the parties have mistakenly characterized what is really at issue in this case, the resolution of the issues as presented is not entirely germane to our disposition.

subsequent application for a conditional use. That result is not only contrary to the PRD Ordinance, but also to the general law of PRDs. In addition, we conclude that the Board's interpretation of Section 301 was also in error. That section clearly applies only to the original applicant making the original PRD application.

In order to resolve this matter, we first turn to an examination of what constitutes a PRD, its purpose and its relationship to the prior zoning. Then, we address how the Board erred in concluding that Section 301 of the PRD Ordinance afforded the applicant a choice of zoning districts. Finally, we examine the PRD Ordinance, which provides a detailed avenue for subsequent modification of the final PRD plan.

## I

Section 107 of the Pennsylvania Municipalities Planning Code (MPC)[9] defines a PRD as

> an area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, or combination of residential and nonresidential uses, the development plan for which does not correspond in lot size, bulk, type of dwelling, or use, density, or intensity, lot coverage and required open space to the regulations established in any open district created, from time to time, under the provisions of a municipal zoning ordinance.

Indeed, Section 101 of the PRD Ordinance in the present case provides that it is "[a]n Ordinance supplementing the [Zoning Ordinance] and the Subdivision and Land Development Ordinance in order to implement in the Township the purposes and intent of the [PRD] as defined and authorized by the [MPC]." (Original Record "O.R.," Exhibit 3.)

In other words, PRDs offer an alternative to traditional, cookie-cutter zoning. A PRD is "a larger, integrated planned residential development which does not meet standards of the usual zoning districts" and offers municipalities flexibility. 2 Robert S. Ryan, Pennsylvania Zoning Law and Practice, § 12.1.1 (1981). "It is this type of flexibility which the PRD provisions of the [MPC] . . . are designed to offer the municipality." *Id.* "The idea behind PRD zoning is to create a method of approving large developments which overrides traditional zoning controls and permits the introduction of flexibility into the design of larger developments." *Id.,* § 12.1.8.

In addition, we point out that a PRD Ordinance replaces the underlying zoning and subdivision ordinances; a PRD is not simply a so-called overlay district. Section 711(d) of the MPC specifically provides that "[u]pon the filing of record of the development plan the zoning and subdivision regulations otherwise applicable to the land included in such plan shall cease to apply thereto." 53 P.S. § 10711(d). "That language dictates that at the time a PRD is recorded, the zoning and subdivision ordinances are no longer applicable." *Alta Vita Condo. Ass'n v. Zoning Hearing Board of the Township of Hempfield,* 736 A.2d 724, 728 (Pa.Cmwlth.1999), *appeal denied,* 563 Pa. 620, 757 A.2d 935 (2000).

Additionally, in *Ruprecht v. Zoning Hearing Board of Hampton Township,* 680 A.2d 1214, 1218 (Pa.Cmwlth.1996), we noted as follows:

> Under Pennsylvania law, zoning and subdivision regulations are distinct types of land development controls; Article V of the MPC treats subdivision regulations while Article VI of the MPC gov-

---

9. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10107.

erns zoning. Robert S. Ryan, Pennsylvania Zoning Law and Practice § 12.1.4 (1981). Thus, section 711(d) of the MPC means only that Articles V and VI of the MPC, which *would* apply to the land if the property was not a PRD, do not apply once the land has received final PRD approval under Article VII of the MPC. *See* Section 707(6) of the MPC, 53 P.S. § 10707(6) .... (emphasis in original)

With those basic principles at the forefront, we turn to the issue of whether the Board erroneously construed Section 301 of the PRD Ordinance.

## II

■ To reiterate, Section 301 of the PRD Ordinance, in pertinent part, provides that "the applicant shall have the right to uses permitted in this PRD Ordinance and to uses permitted by right, by condition, and by special exception in accordance with design requirements and regulations prescribed for those uses in the zoning district within which the applicant is submitting an application for PRD." The Board interpreted this section to mean that the applicant in the present case had the right to both the uses permitted in the PRD Ordinance and to the uses permitted as conditional uses in the underlying zoning district.

The Residents argue that Spring Ridge's interpretation of Section 301, that *after* a PRD has been approved, anyone can apply for any other use that is permitted in the underlying zoning district, eviscerates the PRD Ordinance and any PRDs approved thereunder. They contend that the language of Section 301, that an applicant shall have the right to uses permitted in the PRD Ordinance and to those permitted in the underlying zoning district *within which the applicant is submitting an application for a PRD,* confirms the fact that it applies only to someone applying for an actual PRD.

In other words, the Residents contend that Section 301 does not permit a future purchaser of property within an existing PRD to apply for a use permitted in the underlying zoning district, regardless of its relationship to the existing PRD, thereby ignoring the PRD Ordinance and the previously approved development scheme. The Residents allege that, once a PRD has been created, the property in question is dedicated to the purposes and uses which the original applicant proposed and which the Board approved. Thus, they contend that a later applicant with respect to PRD property may not ignore the PRD already created and use the property for any use permitted in the underlying zoning district, possibly destroying the very integrity of the original development. We agree with the Residents' interpretation of Section 301.

The language of Section 301 of the PRD Ordinance clearly states that the option of referring back to the original, underlying zoning district lies only with the applicant originally making the application for the PRD.[10] Therefore, we conclude that the

---

10. Because the PRD zoning replaced the original zoning, we question the validity of being able to refer back to the original zoning of the parcel each time an applicant makes an application for use thereof. *See* Section 711(d) of the MPC. In essence, if we were to accept the Board's interpretation of Section 301, that every subsequent applicant has a choice of zoning districts (PRD or PO/B), then the Township's maintenance of the underlying PO/B zoning district is somewhat akin to an invalid "floating zone." In other words, a zoning classification of PO/B would concurrently exist on a parcel of land designated, for most of the time, with a PRD zoning classification. *See Eves v. Zoning Board of Adjustment,* 401 Pa. 211, 164 A.2d 7 (1960) (Court invalidated ordinance which created a "float-

Board erred in determining that Spring Ridge had the option of choosing either the PRD zoning or that of the original, underlying district.

## III

Finally, we note that the residents of a PRD are entitled to reliance on the original application, as approved. Indeed, the residents of a PRD have the right to enforce at law or equity the provisions expressly provided for in the PRD plan pursuant to Section 706(2) of the MPC, 53 P.S. 10706(2). *Alta Vita.* Thus, when the Board in the present case permitted Spring Ridge to amend, *de facto,* the final PRD plan via a conditional use application, it circumvented both the MPC and the Township's PRD Ordinance, the latter of which has specific provisions for modification of a final PRD plan.

Specifically, Section 1002.C(3) of the PRD Ordinance, entitled post completion regulations, provides in relevant part as follows:

C. After the certificate of completion has been issued, no changes may be made in the approved development plan except upon application to the Governing Body under the procedure provided below:

. . . .

3. All other changes in the approved Development Plan must be approved by the Governing Body, under the procedure authorized by this Ordinance for approval of a Final Development Plan.

No changes may be made in the approved Development Plan unless they are required by changes in conditions that have occurred since the Final Plan was approved or by changes in the development policy of the Municipality.

Section 1002.C.3 of the PRD Ordinance; O.R., Exhibit 3.

We point out that the requirements that must be met for the grant of a conditional use application are much less arduous than those that must be satisfied in order to modify the PRD plan.[11] As quoted above, Section 1002.C.3 provides that an applicant wishing to modify the approved development plan must use the procedure for approval of a final development plan. Notwithstanding the greater burden on the applicant for modification of the PRD plan, we reiterate that the residents have a right to rely upon the uses to which the Spring Ridge PRD has been dedicated and the provisions of the PRD Ordinance applicable to the Spring Ridge PRD.

Accordingly, we conclude that the Board clearly erred in allowing Spring Ridge to use a conditional use application to circumvent the modification provisions of the PRD Ordinance. Hotels and restaurants are not permitted uses under Section 502 of the PRD Ordinance. Absent an application to modify the PRD plan, that is the end of the inquiry. The Board's apparent "policy" of referring to the Zoning Ordinance when considering subsequent applications for uses in the PRD, instead of the PRD Ordinance, is clearly contrary to law.

---

ing zone" for light-industrial uses, that is, a zoning classification to be applied to tracts as landowners came forward requesting that their properties be rezoned to that classification.)

11. As the Board found:

10. Hotels, including restaurants, are specifically permitted as "Conditional Uses"

pursuant to Section 314.D.5 of the Zoning Ordinance, subject to compliance with the "General Standards" of Section 321.D and the "Specific Standards for Conditional Uses" contained in Sections 314.E.7 (incorporating the requirements of Section 319 and providing for a two-acre minimum lot area) and 321.E of the Zoning Ordinance. (Board's F.F. 10; R.R. 42a.)

Therefore, because hotels and restaurants are not permitted uses in the Spring Ridge PRD and the conditional use application cannot act as an application to modify the PRD plan, we are compelled to reverse the trial court's order.

## ORDER

AND NOW, this 4th day of May, 2001 the August 17, 2000 order of Court of Common Pleas of Berks County is hereby reversed.