IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Gouwens, Emily Gouwens,   :
Hiller Hardie, Sharon Hardie, Kyle   :
Rusche, and Meghan Rusche,   :
            Appellants   :
  :
       v.   :
  :
Indiana Township Board of Supervisors, :   No. 1377 C.D. 2018
Fox Chapel Estates, L.P.   :   Argued: May 7, 2019


BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: June 25, 2019


      Matthew Gouwens, Emily Gouwens, Hiller Hardie, Sharon Hardie, Kyle Rusche and Meghan Rusche (collectively, Objectors), residents of Indiana Township, appeal from the September 18, 2018 order of the Court of Common Pleas of Allegheny County (trial court) affirming the decision of the Indiana Township Board of Supervisors (Board) granting tentative approval of the application filed by Fox Chapel Estates, L.P. (Developer) for a Planned Residential Development (PRD).[1] Upon review, we vacate the trial court's order and remand for additional findings by the Board.

---

[1] The Township of Indiana Zoning Ordinance #368, Allegheny County, Pa. (2011) (Zoning Ordinance) defines a PRD as:

Developer is the equitable owner of a 22.8-acre parcel of land (Property) situated between Fox Chapel Road and Dorseyville Road in Indiana Township (Township). Reproduced Record (R.R.) 585a. On November 2, 2016, Developer filed an application to develop the Property as a PRD to be known as Fox Chapel Estates (Plan). Board's Record, Bates No. Indiana 9 (Indiana No. ___). On February 14, 2017, Developer first presented its Plan to the Board. R.R. 12a. After several postponements and modifications to the Plan, the Board voted to grant tentative approval of the Plan on May 9, 2017. R.R. 79a. On May 19, 2017, the Board issued a written decision granting tentative approval but did not include findings of fact or conclusions of law in its approval. *See id.* On June 16, 2017, Objectors appealed the Board's decision to the trial court and the Board subsequently issued findings of fact and conclusions of law to support its May 19, 2017 decision. R.R. 82a-106a.

By order dated August 30, 2017, the trial court remanded the matter to the Board for a de novo hearing and stayed the pending application for final approval. R.R. 155a. The Board held public hearings on October 10, November 14 and December 12, 2017. R.R. 156a, 234a & 555a. The Board continued the October 10th hearing to ensure that notice of the hearing had been properly posted and advertised as required by law. R.R. 219a.

---

[a]n area of land, controlled by the landowner, to be developed as a single entity for a number of dwelling units, or combination of residential and non-residential uses, the development plan for which does not correspond in lot size, bulk, type of dwelling, or use, density, or intensity, lot coverage, and required open space to the regulations established in any one district, created from time to time, under the provisions of this Ordinance.

Zoning Ordinance Article II, Definitions. A dwelling unit is "[o]ne (1) or more living or sleeping rooms with cooking and sanitary facilities for one family." *Id.*

2

At the November 14th hearing, Developer and Objectors presented evidence to support their respective positions on the Plan. Developer presented the testimony of the project landscape architect and planner, Steven Victor (Victor), with Victor Wetzel Associates. R.R. 237a. Victor described the Property, which is located in the Medium Density Residential (MDR) Zoning District,[2] as having 23 acres with a majority of it tree-covered as an emerging forest. R.R. 239a-40a. Victor explained that, after a study of the market, the type of housing that would be appropriate to develop on the Property is townhouses. R.R. 240a. Victor further explained that the Plan is to construct a maximum of 91 townhouse units with 3 different floor plans. R.R. 248a. Victor summarized how the Plan meets the open space, density and use requirements of the Zoning Ordinance. R.R. 245a-48a. Victor also discussed the waivers from the Zoning Ordinance that the Plan would require if the Board opted to tentatively approve it. R.R. 247a-53a. Additionally, Developer provided a geotechnical investigation report of the development site by ACA Engineering, Inc. (geotechnical report), Indiana No. 575-687, an arborist report by F.A. Bartlett Tree Expert Company (arborist report), R.R. 360a-61a, and a Transportation Impact Study, along with accompanying documents, by David E. Wooster and Associates, Inc. (traffic study). R.R. 363a-508a.

Additionally, at the November 14th hearing, Objectors presented the testimony and expert report of the managing principal of Environmental Planning and Design, Andrew Schwartz (Schwartz). R.R. 270a. Schwartz testified that the Plan failed to meet the Township's criteria for tentative approval because Developer sought to increase density without giving any environmental or planning advantages

---

[2] The MDR Zoning District is "designed to provide areas that preserve the existing characteristics of the single-family dwelling units" and includes: single-family dwelling, two-family dwelling, church, no-impact home based business, public grounds, public utility, forestry, accessory structure, school and PRD. Zoning Ordinance, Article III, Section 301 & Table III-A.

required of a PRD in order to deviate from the Township's subdivision and land development ordinance (SALDO) and the Zoning Ordinance. R.R. 290a-97a & 554a. Further, Schwartz asserted that the Plan fails to maintain consistency with the surrounding neighborhood or provide for better conservation of natural amenities, green ways and open spaces as required by the Zoning Ordinance. R.R. 554a. Schwartz also testified how the Plan does not comply with the Zoning Ordinance. R.R. 280a-86a. Numerous township residents also testified against the Plan. R.R. 310a-42a. At the December 12th hearing, the Board received written documentation relating to the Plan.[3] R.R. 559a-70a.

On January 16, 2018, the Board granted tentative approval of the Plan in a 3-2 vote, and the next day, the Board issued its written decision in support of the tentative approval. *See* Board's Findings of Fact, Conclusions and Decision dated 1/17/18. On February 15, 2018, Objectors appealed the Board's decision to the trial court. R.R. 716a-39a. After briefing by the parties and oral argument, the trial court entered an opinion and order on September 18, 2018, affirming the Board's tentative approval. Trial Court Opinion and Order dated 9/18/18. The trial court explained:

> The Board's Decision granting approval of [Developer's] PRD Plan, including the waivers, is supported by substantial and credible evidence. The Board determined that [Objectors'] arguments related to general detrimental effect upon the neighborhood and general policy concerns as to harmony with the purposes of the Ordinance, [sic] did not justify denial of the PRD plan. The Board's decision is affirmed and the [Objectors'] appeal is dismissed.

---

[3] Developer attempted to present an amended plan at the December 12th hearing, but the Board did not accept the amended plan. R.R. 562a.

*Id*. at 4.  Objectors appeal to this Court.[4]

On appeal, Objectors assert the Board erred by granting tentative approval of the Plan because it treated the Plan "as if it were [sic] a typical land development application" rather than ensuring that Developer met the requirements for a PRD as required by the Zoning Ordinance.  Objectors' Brief at 18, 20-22.  Objectors further contend that the Board's findings of fact are "conclusory" in nature and, in many cases, are not supported by "any evidence" in violation of Section 709(b) of the Pennsylvania Municipalities Planning Code (MPC).[5]  *Id*.  Section 709(b) of the MPC pertains to PRD plans and provides, in relevant part:

> The grant or denial of tentative approval by official written communication *shall include not only conclusions but also findings of fact related to the specific proposal and shall set forth the reasons for the grant*, with or without conditions, or for the denial, and said communication shall set forth with particularity in what respects the development plan would or would not be in the public interest. . . .

53 P.S. § 10709(b) (emphasis added).

Developer counters that the Board is "obligated" to grant tentative approval of a PRD where the Plan satisfies the purposes of a PRD and meets the tentative approval requirements of the Zoning Ordinance, absent a showing that the development would be contrary to the public interest.  Developer's Brief at 18-20.  Developer contends that the Board properly concluded that Developer met the

---

[4] Where, as here, the trial court took no additional evidence, we are limited to determining whether the governing body committed an error of law or abused its discretion.  *Kang v. Supervisors of Twp. of Spring*, 776 A.2d 324, 327, n.7 (Pa. Cmwlth. 2001) (citing *Herr v. Lancaster Cty. Planning Comm'n*, 625 A.2d 164 (Pa. Cmwlth. 1993)).  The governing body abuses its discretion when its findings of fact are not supported by substantial evidence.  *Id*.

[5] Act of July 31, 1986, P.L. 805, *as amended*, 53 P.S. § 10709(b).

requirements of the Zoning Ordinance and that "Objectors failed to produce sufficient evidence to convince the Board that their general policy concerns warranted denial of the Plan." *Id*. at 20. Developer asserts that the Board's findings are supported by the record and that Objectors failed to produce "public interest objections of a substantial, specific, and exceptional nature" sufficient to overturn the tentative approval, and therefore, the trial court's determination should be affirmed. *Id*.

Upon our review of the Board's written decision, this Court cannot ascertain why the Board granted tentative approval of the Plan. The purpose of a board's written decision is to enable a reviewing court and applicant to understand the reasons for the board's decision and to show that the decision is reasoned and not arbitrary. *Smith v. Hanover Zoning Hearing Bd.*, 78 A.3d 1212, 1223 (Pa. Cmwlth. 2013) (construing Section 908(9) of the MPC, 53 P.S. § 10908(9), which provides, "[w]here the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor"); *see also Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 816 (Pa. Cmwlth. 2005) (explaining that a board's opinion is sufficient if it provides an adequate explanation of its resolution of the factual questions involved and sets forth its reasoning in such a way to show that its decision was reasoned and not arbitrary).

Where a board's decision is "clear and substantially reflects application of the law," this Court has held the decision to be sufficient. *Taliaferro*, 873 A.2d at 816. In the context of decisions involving variances, this Court has indicated that there is no requirement that the board cite "specific evidence" to support each of its findings. *Id*. Nevertheless, the board has to provide enough information to enable

6

effective appellate review. *Id*. If the board, in its decision, renders specific findings and conclusions pertaining to the plan as required by the terms of the applicable zoning ordinance, provides a discussion explaining its rationale, and resolves evidentiary conflicts and credibility issues, this Court has held that the decision is sufficient. *Id*.

Here, however, the Board's decision does not provide sufficient findings of fact to enable effective appellate review. Though the Board considered the requirements of the Zoning Ordinance pertaining to PRD tentative approval, the Board did not provide specific factual findings related to the Plan to support its conclusions. As a result, this Court cannot ascertain upon what basis the Board tentatively approved the Plan, and therefore, we cannot consider the merits of the objections raised by Objectors. To demonstrate the difficulty faced by this Court in attempting to review this matter, we will summarize the purpose and some of the tentative approval criteria provided in Sections 400 and 401(F) of the Zoning Ordinance, the Board's findings pertaining to these requirements, the parties' arguments relating to these terms, as necessary, and explain why the Board's decision fails to comply with Section 709(b) of the MPC, 53 P.S. § 10709(b).

### *Purpose Criteria – Section 400*

We begin our discussion with the purpose of a PRD as provided in Section 400 of the Zoning Ordinance. Section 400 provides six purposes:

> [1] to encourage innovations in residential development, [2] to better meet modern housing demands, [3] *to create variety in the type, design and arrangement of housing units*, [4] to conserve and permit economies in providing public services and [5] to reflect changes in the technology in land development and [6] to relate the development of land to the specific site, a . . . (PRD) may be approved under the provisions of this Ordinance, *if, and only if, they*

7

> *accomplish the foregoing purposes* and they comply with all other ordinances and regulations of the Township or the County or State not inconsistent herewith, except as to procedure, *and with the following standards and provisions.* The requirements for approval of a [PRD] plan under this Article shall be an exception to and in lieu of the provisions of the [SALDO], as the same may be amended.

Zoning Ordinance § 400 (emphasis added). The Board here rendered one specific finding of fact regarding the purposes of the Zoning Ordinance, which addressed purpose three enumerated above involving housing units. The Board found that:

> *The plan creates a diverse and variety of housing types in the proposed development.* Specifically, roughly 50% of the homes will be the Griffin model which involves first floor living and will be marketed primarily to empty nesters. The Schubert design represents approximately 25% of the units and will be 2-3 bedroom traditional townhouses with the bedrooms located on the third level. The Rosecliff model represents approximately 25% of the proposed units[,] has a first floor master bedroom and will be marketed to empty nesters.
>
> The [Board] find[s] this to be a *diverse style of housing.*

Board's Finding of Fact (F.F.) No. 6 (emphasis added).

Objectors assert that the Plan lacks the "variety" required by a PRD, as all the homes are townhouses, and therefore, the Board's finding is not supported by the evidence. Objectors' Brief at 29. Developer contends that Section 400 is a "general criteria provision which communicates the motivation and goals behind the Township's decision to allow for the approval of PRDs." Developer's Brief at 22. Developer asserts that Objectors' expert, Schwartz, conceded that "general guidelines and objectives in a zoning ordinance are not the standards by which a

8

PRD application is judged," as Developer contends that the Board and this Court must look to the "objective standards and criteria" contained in the Zoning Ordinance. *Id*. at 23. Developer further asserts that the Zoning Ordinance does not require "multiple housing types in a single PRD[,]" *id.* at 24, and, in support, relies on Schwartz's testimony stating, "[i]n most PRD plans, there is a variety of housing. [But here,] [t]he ordinance does not stipulate." R.R. 302a. We disagree.

As noted above, Section 400 of the Zoning Ordinance enumerates six purposes for PRDs and provides that the Board may approve a PRD "if, and only if, [it] accomplish[es] the foregoing *purposes*." Zoning Ordinance § 400 (emphasis added). Although Developer asserts that the purposes are not the standards by which the PRD application is judged, the plain language of Section 400 indicates otherwise. The Board must consider the purposes of a PRD when evaluating an application because a PRD is unique and is intended to

> offer an alternative to traditional, cookie-cutter zoning. A PRD is a larger, integrated planned residential development which *does not meet the standards of the usual zoning districts* and offers municipalities flexibility . . . . It is this type of flexibility which the PRD provisions of the MPC . . . are designed to offer the municipality. The idea behind PRD zoning is to create a method of approving large developments which *overrides traditional zoning controls* and permits the introduction of flexibility into the design of larger developments.

*Kang v. Supervisors of Twp. of Spring*, 776 A.2d 324, 328 (Pa. Cmwlth. 2001) (emphasis added, quotations and citations omitted); *Michaels Dev. Co., Inc. v. Benzinger Twp. Bd. of Supervisors*, 413 A.2d 743, 747 (Pa. Cmwlth. 1980). Given the unique nature of a PRD, the Board must ensure, prior to granting tentative approval, that the Plan does, in fact, meet the specific requirements for a PRD in the

Zoning Ordinance. *See* Section 702 of the MPC, 53 P.S. § 10702 (explaining that the governing body of each municipality may enact provisions within a zoning ordinance fixing the *standards* and conditions for a PRD and "[*p*]*ursuant to such provisions* the governing body may approve, modify or disapprove any development plan within the municipality") (emphasis added). The reason that the Board must follow the requirements specific to a PRD is because, when the Board grants tentative approval, "it *shall* be deemed to be an amendment to the zoning map, effective upon final approval, and shall be noted on the zoning map." Section 710(a) of the MPC, 53 P.S. § 10710(a) (emphasis added). Because a PRD "overrides traditional zoning controls," and upon final approval amends the zoning map, it is important that the Board, prior to granting tentative approval of such a plan, ensure that the specific requirements enumerated in the zoning ordinance are followed.

The Zoning Ordinance here provides that the Board may approve a PRD "if, and only if, [it] accomplish[es] the foregoing *purposes*" and, therefore, renders the specified purposes requirements. Zoning Ordinance § 400. Section 400 provides as a requirement that the Plan have a "*variety* in the type, design and arrangements of housing units[.]" *Id*. (emphasis added). The Zoning Ordinance does not define the term "variety" so we interpret and apply the term "in accordance with its usual and generally accepted meaning." *Council of Middletown Twp., Del. Cty. v. Benham*, 496 A.2d 1293, 1295-96 (Pa. Cmwlth. 1985). The term "variety" is commonly accepted to mean "the quality or state of having different forms or types . . . a number or collection of different things especially of a particular class . . . something differing from others of the same general kind." "Variety," Merriam-Webster, available at https://www.merriam-webster.com/dictionary/variety (last

visited June 21, 2019). Thus, to have a variety means that there must be more than one. This is an objective standard against which we can measure compliance.

Applying this standard here, Section 400 allows for PRD approval "if and only if" there is "a variety in the type, design and arrangement of housing units," that is, (1) more than one type of housing unit, (2) more than one design of housing unit and (3) more than one arrangement of housing unit. Victor testified that "the *type* of housing that would be appropriate for this particular piece of property given its zoning options would be townhouses." R.R. 240a (emphasis added). Additionally, the Board granted tentative approval for a "91-Unit Townhouse PRD[.]" Board's Findings of Fact, Conclusions and Decision issued 1/17/18, Approval No. 1.

The Board found that the Plan creates a "variety of housing types" and, to support this conclusion, summarized the three models of townhouses that Developer intends to build (the Griffin model, the Schubert design and the Rosecliff model). F.F. No. 6. But, noting that there are three models of townhouses proposed does not sufficiently explain the Board's conclusion that the Plan has more than one type of housing unit and, similarly, does not address the arrangement of the housing unit. At best, the Developer's intention to build three models of townhouses may support a conclusion that the Plan has more than one "design" of housing unit, but this Court cannot ascertain whether this is what the Board meant. Based on the Board's finding on this purpose requirement, this Court cannot ascertain whether the Plan actually meets the requirement or whether the Board simply failed to adequately explain the basis for its decision as required by Section 709(b) of the MPC, 53 P.S. § 10709(b).

11

Further, the Board rendered the following finding regarding the remainder of the purposes of a PRD as follows:

> The purpose of the [PRD] Ordinance is to encourage innovations in residential developments, to better meet modern housing demands, to create variety in the type, design and arrangement of housing units, to conserve and permit economies in providing public services and to reflect the changes in the technology in land development and to relate the development of the specific site. The Plan satisfies these objectives.

F.F. No. 5. Though the Board concluded that the Plan satisfies the "objectives" of a PRD, this Court cannot ascertain what specific facts pertaining to the Plan the Board relied upon to support this conclusion. This finding is simply a recitation of Section 400. The Board does not explain how the Plan encourages "innovations in residential developments," "better meet[s] modern housing demands," "conserve[s] and permit[s] economies in providing public services," "reflect[s] changes in the technology in land development," and "relate[s] the development of land to the specific site" as provided therein. *See* Zoning Ordinance § 400. As a result, this Court cannot ascertain the basis for the Board's tentative approval of the Plan or how the Plan aligns with the requirements of Section 400 of the Zoning Ordinance.

### *Tentative Approval Criteria – Section 401(F)*

We now turn to the tentative approval criteria that the Board must consider when rendering its decision as provided in Section 401(F) of the Zoning Ordinance. Section 401(F) of the Zoning Ordinance provides, "[t]he Township Board of Supervisors may grant tentative approval to a proposed development plan *when it is found to meet the following criteria*[,]" and enumerates seven specific criteria. Zoning Ordinance § 401(F) (emphasis added). Objectors contend that the Board made no findings with respect to all seven of the criteria provided in Section

12

401(F) and, to the extent the Board rendered findings on the criteria, the Board's conclusions did not provide reasons explaining how it reached its conclusion. Objectors' Brief at 19-21 & 33. Upon review, we agree that the Board's findings are insufficient.

The Board rendered no specific findings on two of the seven criteria, specifically, Section 401(F)(1) and (7) of the Zoning Ordinance. Section 401(F)(1) requires a finding that the Plan "complies with all applicable community objectives of Article I," as provided in the Township's most recent comprehensive plan.[6] Zoning Ordinance § 401(F)(1). Section 401(F)(7) requires a finding as to whether the Plan "proposes development over a period of years" and, if so, whether "the phased development schedule is sufficient to protect the interests of the public and of the residents of the PRD." *Id*. § 401(F)(7). This Court cannot ascertain whether the Board considered these criteria based on the findings of fact and conclusions of law provided.

Nonetheless, Developer argues that the Board did not have to render findings regarding the Section 401(F)(1) criteria because it refers to the Township comprehensive plan, which is "general criteria" as opposed to "specific, objective criteria" upon which a PRD application is examined. Developer's Brief at 26. Developer maintains that the criteria is general, and therefore, Objectors bear the burden of proving failure to comply. *Id*.

Developer is correct that this Court has indicated that compliance with the comprehensive plan does not control the zoning ordinance provisions or serve as a basis to deny a PRD plan. *Michaels Dev.*, 413 A.2d at 747; *Doran Invs. v.*

---

[6] In Article I of the Zoning Ordinance, Section 104 expressly provides for the "[c]ommunity [d]evelopment [g]oals and [o]bjectives" explaining that "[t]he purpose of this Ordinance is to implement the goals and objectives found in the most recent Township Comprehensive Plan." Zoning Ordinance § 104.

*Muhlenberg Twp.*, 309 A.2d 450, 456 (Pa. Cmwlth. 1973). However, in the present matter, the provisions of the Township's Zoning Ordinance that apply to PRD approval require the Board to render a finding on this criteria. *See* Zoning Ordinance § 401(F) (explaining that the Board may grant tentative approval "when it is found to meet the following criteria"); *see Michaels Dev.*, 413 A.2d at 747 (stating, "a PRD must meet the requirements of the particular [PRD] [o]rdinance"). This Court cannot evaluate Objectors' objection to this criteria because the Board provided no mention of the criteria in its decision.

The same problem exists with the Section 401(F)(7) criteria. The Plan includes building 91 townhouses on the Property in 2 phases[7] but the Board did not render a finding as to whether Developer anticipates execution of the Plan taking a "period of years," with a development schedule to protect the interests of the public and residents of the PRD, or, alternatively, whether the Plan is not going to take a "period of years" and, therefore, a phased development schedule is not required. Based on the Board's failure to render specific findings on the Section 401(F)(1) and (7) criteria alone, this Court may remand this matter. But this Court is having difficulty ascertaining the Board's reasons for granting tentative approval of the Plan even when it rendered findings specific to the remaining criteria.

While this Court will not address every specific insufficiency, we further note the inadequacy of the Board's finding regarding Section 401(F)(5) of the Zoning Ordinance. Section 401(F)(5) requires the Board to render a finding that:

> The tract of the PRD is harmonious and consistent with the neighborhood in which it is located. The flexibility of design innovation and unique treatment of the site is

---

[7] The project description provides that the development will be built in two phases. R.R. 585a. "Phase One will have 62 units and Phase Two will have 29 units." *Id.*

14

consistent with the purpose of the Zoning District and adjacent land uses.

Zoning Ordinance § 401(F)(5). Here, the Board provided that, "[t]he tract of the PRD is harmonious and consistent with the neighborhood in which it is located in compliance with Section 401(F)(5) of the Zoning [Ordinance]." F.F. No. 9. But, the Board is rendering a conclusion and, in so doing, only restates the criteria. Reviewing the Board's finding with respect to Section 401(F)(5), and reviewing the decision as a whole, this Court cannot ascertain the Board's reasoning to support its conclusion that the Plan is consistent with the neighborhood in which the PRD will be located. In the decision, the Board does not provide any information regarding the neighborhood or adjacent land uses or how the Board reached this conclusion. Further, this Court cannot ascertain whether the Board considered the remainder of the Section 401(F)(5) criteria, that is, whether "[t]he flexibility of design innovation and unique treatment of the site is consistent with the purpose of the Zoning District and adjacent land uses." Zoning Ordinance § 401(F)(5). The Board provided no findings or reasoning as to this criteria at all when it addressed the Section 401(F)(5) criteria.

Additionally, Section 401(F)(6) of the Zoning Ordinance provides that the Board is to render a finding as to whether

> [t]he proposed PRD will afford a greater degree of protection of natural resources such as slide prone areas, water courses, riparian buffers, flood prone areas and flood plains, dense vegetative cover, trees having calipers of eight inches (8") measured three feet (3') or higher above the ground, than if the property in question were developed in accordance with the Township Subdivision and Land Development Ordinance.

Zoning Ordinance § 401(F)(6).

15

The Board found with respect to this criteria that:

> Due to the design and layout of the PRD, it will afford a greater degree of protection of natural resources such as landslide-prone areas, water courses, riparian buffers, flood-prone areas and floodplains, dense vegetation cover, trees having calipers of eight inches measured three feet or higher above the ground than if the Property was to be developed in strict conformity with the Township Subdivision and Land Development Ordinance ("SALDO") which establishes compliance with Section 401(F)(6) of the Zoning [Ordinance].

F.F. No. 10. Again, the Board simply recites the criteria set forth in Section 401(F)(6) of the Zoning Ordinance but does not explain the facts upon which it relies or the reason that the Plan meets this criteria, as required by Section 709(b) of the MPC, 53 P.S. § 10709(b). As such, this Court does not understand the basis for the Board's conclusion that the Plan meets the Section 401(F)(6) criteria.[8]

---

[8] We did not address the criteria required by Section 401(F)(2) of the Zoning Ordinance but note that the Board appeared to address this criteria in the context of granting waivers from the Zoning Ordinance requirements. Section 401(F)(2) provides:

> Where the proposed PRD provides standards varying from those in this Article and the subdivision regulations otherwise applicable to the subject property, a statement that such departure shall be in the public interest and will promote the health, safety, and general welfare of the public.

Zoning Ordinance § 401(F)(2). In several of its findings, the Board concluded that the waivers were in the "public interest," and made statements referencing the language in Section 401(F)(2) (for example, in Findings of Fact Nos. 15, 18, 19 and 21). On remand, the Board is to review all of its findings pertaining to the waivers to ensure that its conclusions are supported by facts related to the Plan. Further, the Board should ensure that it provides an explanation as to how the waiver promotes the health, safety and general welfare of the public as required by Section 401(F)(2). The Board's findings on the waivers and Section 401(F)(2) requirements should be specific enough as to the particulars of the Plan to enable a court to adequately assess Objectors' objections, if necessary.

16

*Conclusion*

For the aforementioned reasons, we conclude that the Board did not follow the requirements of Section 709(b) of the MPC, 53 P.S. § 10709(b), in its written decision. The Board's written decision did not adequately provide findings of fact "related to" the Plan, nor did it set forth the reasons for granting tentative approval of the PRD under the terms of the Zoning Ordinance. As a result, this Court does not understand the reasons that the Board tentatively approved the Plan, and therefore, we cannot review the specific objections raised by Objectors.

Accordingly, we vacate the trial court's decision and remand this matter to the trial court to remand to the Board. On remand, the Board is to render findings of fact and explain how the Plan meets the purposes of a PRD as required by Section 400 of the Zoning Ordinance and explain the reasons that it granted tentative approval of the Plan as to all criteria required by Section 401(F) of the Zoning Ordinance. The Board's findings should be specific enough as to the particulars of the Plan to comply with Section 709(b) of the MPC, 53 P.S. § 10709(b), so that a court can adequately assess Objectors' objections, if necessary.

_____
CHRISTINE FIZZANO CANNON, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Gouwens, Emily Gouwens,   :
Hiller Hardie, Sharon Hardie, Kyle   :
Rusche, and Meghan Rusche,   :
           Appellants   :
  :
      v.   :
  :
Indiana Township Board of Supervisors, :   No. 1377 C.D. 2018
Fox Chapel Estates, L.P.   :

## O R D E R

AND NOW, this 25th day of June, 2019, the September 18, 2018 order of the Court of Common Pleas of Allegheny County (trial court) is VACATED, and this matter is remanded to the trial court with directions to remand to the Indiana Township Board of Supervisors (Board) for the Board to issue a decision in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge