IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Matthew Gouwens and Emily Gouwens, | : |
| Appellants | : |
| | : |
| v. | : |
| | : |
| Indiana Township Board of Supervisors and Fox Chapel Estates, L.P. | : No. 993 C.D. 2024 |
| | : Submitted: May 6, 2025 |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: July 10, 2025

      Matthew Gouwens and Emily Gouwens (Appellants) appeal from the June 26, 2024, order of the Court of Common Pleas of Allegheny County (trial court). The trial court dismissed Appellants' appeal from the February 15, 2023, determination of the Indiana Township (Township) Board of Supervisors (Board) to grant tentative approval of a planned residential development (PRD) proposed by Fox Chapel Estates, L.P. (FCE), the equitable owner of the property. Upon review, we are constrained to vacate and remand for the Board to issue a new decision in accordance with this opinion.

## I. Factual and Procedural Background[1]

This Court has previously addressed disputes between these parties regarding the subject property. In *Gouwens v. Indiana Township Board of Supervisors*, 262 A.3d 648 (Pa. Cmwlth. 2019) (*Gouwens I*), we held that the trial court erred in affirming the Board's January 2018 decision in support of its grant of tentative approval of the previous version of this project because the Board failed to provide findings of fact and sufficient explanations for its determination that the project complied with the relevant provisions of the Township's Zoning Ordinance[2] and the Pennsylvania Municipalities Planning Code (MPC).[3] We vacated and remanded for the Board to produce findings of fact and explain why it concluded that the previous version of the project met the requisite criteria. *Id.* at 659.

This matter returned to us in *Gouwens v. Indiana Township Board of Supervisors*, 260 A.3d 1029 (Pa. Cmwlth. 2021) (*Gouwens II*). There, we held that the trial court erred in affirming the Board's revised decision on the same record regarding the previous version of the project because the Board's conclusions were not supported by record evidence establishing compliance with the relevant laws; accordingly, we reversed. *Id.* at 1046.

Notably, since then, FCE has revised the project significantly. The current version of the project (the Plan) is for the same property, which consists of approximately 22.8 acres of land and is in the Township's Medium Density Residential (MDR) Zoning District, which permits PRDs. Reproduced Record

---

[1] The record in this matter is extensive and Appellants raised and briefed six distinct issues, which are listed below. However, our disposition pertains to only one issue. In the interest of judicial economy, the facts and background presented here pertain solely to that issue.

[2] Twp. of Indiana Zoning Ordinance, Allegheny Cnty., Pa. (2011).

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 - 11202.

(R.R.) at 37a-39a & 1479a. Previously, the project consisted of 91 townhouses of varying designs; the current plan (Plan) consists of 57 townhouses, 6 two-family dwellings, 1 single-family dwelling, and a three-story multi-family residential structure containing 30 garden-style condominium units, along with a gym and a community room available to all Plan residents. *Id*. FCE submitted its application for tentative approval of the Plan on April 13, 2022, with revisions submitted on September 1, 2022. *Id*. at 1479a. Public hearings were held in October 2022 and November 2022. *Id*. at 1480a.

Steven Victor (Victor) testified for FCE. R.R. at 28a. He is a landscape architect with over 50 years of experience in land planning. *Id*. He presented an aerial photograph of the area where the "character of the surrounding neighborhood" is visible. *Id*. at 33a. Outside the site, to the west and southwest, is undeveloped property. *Id*. To the south and east is a "single-family residential neighborhood with a mix of single-family lots." *Id*. Victor added that "[t]here's quite a bit of variety within that" neighboring residential area in that some lots are "as small as 4,692 square feet, and others that go up to about [two] acres in size." *Id*.

John Trant (Trant), a planner and landscape architect with 20 years of land use experience, testified for Appellants, who are party objectors in opposition to the Plan. R.R. at 246a. Trant stated that the Plan is significantly denser than the surrounding residential neighborhood, which has many single houses on large lots, thus creating more undeveloped open space. *Id*. at 271a. He acknowledged that he based this position on a Google Earth search rather than the County assessment map, which would show the actual tax parcels. *Id*. at 293a. He also acknowledged that many parcels in the same zoning district did not meet the minimum requirements for lot size. *Id*. at 293a.

3

Multiple other party objectors, who had been sworn in, testified that the Plan differs sharply from the character of the surrounding neighborhood. Daniel Walker stated that he failed to see how a project with 57 townhouse units and 30 condominium apartments could be in harmony and consistent with the neighboring area, which had variety but was largely single-family homes on larger lots with some dwellings being for two families at most. *Id*. at 353a.

After the hearings, the parties submitted proposed findings of fact and conclusions of law in January 2023. R.R. at 1480a. On February 23, 2023, the Board issued a decision granting tentative approval of the Plan, conditioned upon FCE payment of all applicable fees; compliance with all relevant ordinances, regulations, agency approvals, and statutes; and compliance with the Township engineer's stormwater management plan and "tentative PRD review letters" that were issued in May 2022. *Id*. at 1507a-08a.

Appellants appealed to the trial court, which took no new evidence and issued an October 10, 2023, opinion and order. R.R. at 1519a-28a. The trial court concluded that the Board's determinations with respect to the Plan's compliance with the Township's Zoning Ordinance were supported by the record. *Id*. at 1521a-25a. However, the trial court remanded because the Board failed to address Section 709(b)(2) of the MPC, 53 P.S. § 10709(b)(2), which requires boards to explain the extent to which a development plan departs from the locality's zoning and subdivision ordinances and why any departures are or are not in the public interest even though the development may be in compliance with the relevant PRD laws. *Id*. at 1525a-27a.

The Board produced its supplemental opinion on January 9, 2024, explaining that, for example, the Zoning Ordinance's rules for the MDR district did

4

not expressly authorize multi-family dwellings like the Plan's proposed condominium building. R.R. at 1532a. However, the condominium building would serve public interests by helping the Township meet current housing demands at varied price points, which in turn would increase diversity of ownership and the Township's tax revenues. *Id*. at 1533a-35a. Similarly, the Board stated that the Plan departed from the zoning district's density and setback rules but benefited the public interest by providing common open space and conserving other parts of the site as undisturbed natural areas, both of which would benefit the community. *Id*. at 1535a-36a.

The trial court concluded in a June 26, 2024, opinion that the Board's January 2024 supplemental opinion sufficiently addressed and complied with Section 709(b)(2) of the MPC. R.R. at 1582a-84a. As such, the trial court issued a final order on that date affirming the Board's tentative approval of the Plan. *Id.* at 1580a-85a. Appellants timely appealed to this Court.

## II. Issues

Appellants raise six issues, which we have reordered for clarity:

1. The Plan does not comply with Section 401(F)(1) of the Zoning Ordinance, which requires that a PRD implement the community's goals and objectives as found in the most recent Township Comprehensive Plan.

2. The Plan does not comply with Section 401(F)(3) and 409(G) of the Zoning Ordinance with regard to the calculation and composition of common open space within the Plan.

3. The Plan does not comply with Section 401(F)(4) of the Zoning Ordinance, which requires a PRD to provide adequate internal traffic circulations.

5

4. The Plan's revised internal traffic circulation approach has the same defects that this Court rejected in *Gouwens II*, therefore, the Plan does not comply with the law of the case in this litigation.

5. The Plan does not comply with Section 409(I) of the Zoning Ordinance with regard to the Plan's proposed buffer zone.

6. The Plan does not comply with Section 401(F)(5) of the Zoning Ordinance, which requires a PRD to be harmonious and consistent with the neighborhood in which it is located.

Appellants' Br. at 5-9.

However, only one of Appellants' issues is relevant to our disposition here. This is Appellants' assertion that the Plan does not comply with Section 401(F)(5) of the Township's Zoning Ordinance, which requires a PRD to be "harmonious and consistent with the neighborhood in which it is located." Appellants' Br. at 34-36.

## III. Discussion

Article IV of the Township's Zoning Ordinance, which governs PRDs, is modeled on Article VII of the MPC.[4] This Court has described PRDs as follows:

PRDs offer an alternative to traditional, cookie-cutter zoning. A PRD is a larger, integrated planned residential

---

[4] Where, as here, the trial court took no additional evidence, we are limited to determining whether the governing body committed an error of law or abused its discretion. *Kang v. Supervisors of Twp. of Spring*, 776 A.2d 324, 327, n.7 (Pa. Cmwlth. 2001). Witness credibility is a determination to be made by the fact finder, here, the Board, and is generally not a proper subject for appellate review. *Bailey v. Zoning Bd. of Adjustment*, 780 A.2d 809, 813 (Pa. Cmwlth. 2001). Also, a zoning board's findings are owed deference in light of the board's "expertise in and knowledge of local conditions." *Marshall v. Phila. Zoning Bd. of Adjustment*, 97 A.3d 323, 333 (2014). However, the governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Kang*, 776 A.2d at 327 n.7.

> development which does not meet standards of the usual zoning districts and offers municipalities flexibility. It is this type of flexibility which the PRD provisions of the [MPC] . . . are designed to offer the municipality. The idea behind PRD zoning is to create a method of approving large developments which overrides traditional zoning controls and permits the introduction of flexibility into the design of larger developments.

*Kang*, 776 A.2d at 328 (citations & quotation marks omitted). Section 702 of the MPC grants each municipality the authority to enact individualized PRD ordinances in order to "[s]et forth the standards, conditions and regulations for a planned residential development consistent with the provisions of this article." 53 P.S. § 10702.

"Given the unique nature of a PRD and its character as a departure from traditional zoning requirements, a zoning board must ensure, prior to granting tentative approval, that the planned PRD does, in fact, meet the specific requirements in the locality's zoning ordinance." *Gouwens II*, 260 A.3d at 1036. This is because a PRD "overrides traditional zoning controls" and, upon tentative approval, effectively amends the zoning map. *Id*.

As noted, Article IV of the Township's Zoning Ordinance governs PRDs. Section 401(F)(5) states that a proposed PRD may be granted tentative approval if its tract design is "harmonious and consistent with the neighborhood in which it is located" and "[t]he flexibility of design innovation and unique treatment of the site is consistent with the purpose of the Zoning District and adjacent land uses." Zoning Ordinance § 401(F)(5). We held in *Gouwens II* that the provisions of Section 401 are mandatory in order for a proposed PRD to be eligible for tentative approval. 260 A.3d at 1034.

In the PRD context, Section 709(b) of the MPC states:

7

> The grant or denial of tentative approval by official written communication shall include not only conclusions but also findings of fact related to the specific proposal and shall set forth the reasons for the grant, with or without conditions, or for the denial, and said communication shall set forth with particularity in what respects the development plan would or would not be in the public interest, including, but not limited to, findings of fact and conclusions on the following:
>
> ….
>
> (5) the relationship, beneficial or adverse, of the proposed [PRD] to the neighborhood in which it is proposed to be established[.]

53 P.S. § 10709(b). This Court has explained that the Board must set forth its findings with particularity and cannot rely on general statements to support its determinations. *Appeal of Molnar*, 441 A.2d 487, 490 (Pa. Cmwlth. 1982).

> Relevant to this litigation, in *Gouwens I*, we stated:
>
> The purpose of a board's written decision is to enable a reviewing court and applicant to understand the reasons for the board's decision and to show that the decision is reasoned and not arbitrary.
>
> Where a board's decision is "clear and substantially reflects application of the law," this Court has held the decision to be sufficient. In the context of decisions involving variances, this Court has indicated that there is no requirement that the board cite "specific evidence" to support each of its findings. Nevertheless, the board has to provide enough information to enable effective appellate review. If the board, in its decision, renders specific findings and conclusions pertaining to the plan as required by the terms of the applicable zoning ordinance, provides a discussion explaining its rationale, and resolves evidentiary conflicts and credibility issues, this Court has held that the decision is sufficient.

262 A.3d at 654 (citations omitted).

8

In *Gouwens I*, which concerned the previous version of the Plan, we vacated and remanded based on the insufficiency of the Board's decision. 262 A.3d at 659. With regard to Section 401(F)(5), which requires a PRD to be "harmonious and consistent with the neighborhood in which it is located," we determined that the Board failed to provide adequate findings of fact or properly explain the basis for its conclusions:

> [T]he Board provided that, "[t]he tract of the PRD is harmonious and consistent with the neighborhood in which it is located in compliance with Section 401(F)(5) of the Zoning [Ordinance]." [Finding of Fact 9]. But, the Board is rendering a conclusion and, in so doing, only restates the criteria. Reviewing the Board's finding with respect to Section 401(F)(5), and reviewing the decision as a whole, this Court cannot ascertain the Board's reasoning to support its conclusion that the Plan is consistent with the neighborhood in which the PRD will be located. In the decision, the Board does not provide any information regarding the neighborhood or adjacent land uses or how the Board reached this conclusion. Further, this Court cannot ascertain whether the Board considered the remainder of the Section 401(F)(5) criteria, that is, whether "[t]he flexibility of design innovation and unique treatment of the site is consistent with the purpose of the Zoning District and adjacent land uses." Zoning Ordinance § 401(F)(5). The Board provided no findings or reasoning as to this [criterion] at all when it addressed the Section 401(F)(5) criteria.

*Id*. at 658.

Here, with regard to the current version of the Plan, the Board's entire treatment of Section 401(F)(5), a mandatory requirement for PRD tentative approval, is as follows. The decision quotes the provision, then concludes: "The PRD is harmonious and consistent with the MDR-zoned neighborhoods surrounding where it is located." R.R. at 1491a. The decision then cites to Victor's testimony

9

that the lot sizes of the properties in the residential neighborhood adjoining the Plan site vary in size. *Id*. The decision also cites to the use chart for the MDR district, which includes PRDs as a permitted use. *Id*. (citing Zoning Ordinance Table III-A). Generally, the Board credited Victor's testimony without further comment, gave Trant's testimony lesser weight, and characterized the party objectors' positions as insufficiently specific and exceptional to support a denial of the Plan. *Id*. at 1481a, 1498a & 1507a. The trial court agreed. *Id*. at 1521a-22a.

Appellants argue that the Board's treatment of this issue fails to address or consider the real differences between the Plan and the neighborhood and that the mere permissibility of a PRD in a particular district does not automatically make it harmonious and consistent with the neighborhood in which it is located. Appellants' Br. at 35. Appellants point to Trant's testimony and the numerous party objectors who testified to the contrary and described the Plan as, *inter alia*, a "high-density island" that is "irrationally different" from the extant neighborhood. *Id*. at 36.

Appellees maintain that the Board's citation to Victor's testimony regarding lot sizes was sufficient to support the Board's determination that the Plan is "harmonious and consistent with the neighborhood in which it is located." Appellees' Br. at 25-27 (addressing Section 401(F)(5) of the Zoning Ordinance). Appellees also point to case law stating, with regard to non-PRD land use matters, that if a use is permitted, then it is "presumptively consistent with the health, safety and welfare of the community." *Id*. Appellees also echo the trial court's conclusion that the party objectors' concerns were insufficiently specific and exceptional to support denying tentative approval of the Plan. *Id*. at 28-29.

Because PRD tentative approval "overrides traditional zoning controls" and "effectively amends the zoning map," compliance with the Section 401(F)

10

factors is mandatory. *See Gouwens II*, 260 A.3d at 1036. However, as with the previous version of the Plan in *Gouwens I*, the Board fails to sufficiently explain how the current version of the Plan is "harmonious and consistent with the neighborhood in which it is located," as required by Section 401(F)(5). *See Gouwens I*, 262 A.3d at 658. By extension, the Board has failed to comply with the written decision requirements of Section 709(b) of the MPC, particularly Section 709(b)(5), which requires a board to set forth "the relationship, beneficial or adverse, of the proposed [PRD] to the neighborhood in which it is proposed to be established." 53 P.S. § 10709(b).

In *Molnar*, the borough council's cursory explanation for denying tentative approval of a PRD was

> that the PRD, composed of single-family attached, duplex and single-family detached dwellings of a differing architectural style would not comport with a neighborhood presently composed of higher priced single-family detached homes, and that the resulting "disharmony, dissatisfaction and inevitable property devaluation . . . would not contribute to the public interest."

441 A.2d at 490. This Court rejected that explanation, reasoning that it was merely "a general statement and as such fail[ed] to meet the requirement that the [b]orough's decision shall set forth with particularity the respects in which the plan would or would not be in the public interest as mandated by Section 709(b) of the MPC[.]" *Id.*

Similarly, here, the Board's treatment of whether the Plan will be harmonious and consistent with the neighborhood and whether its design and treatment of the site is "consistent with the purpose of the [district] and adjacent land uses" consists of a citation to the Zoning Ordinance's provision allowing PRDs in the MDR district and five lines stated by Victor about lot sizes. The Board has not

11

provided this Court with a sufficient explanation, much less one supported by the record, regarding the actual nature of the neighborhood in which the Plan will be located and how the Plan will comport with the area's extant characteristics. Indeed, the Board's explanation for its conclusion that the Plan satisfies Section 401(F)(5) lacks even the minimal detail this Court rejected in *Molnar*. Section 709(b) of the MPC requires a board to "provide enough information to enable effective appellate review." *Gouwens I*, 262 A.3d at 654 (citing *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 816 (Pa. Cmwlth. 2005)). The Board here has failed to do so.

## IV. Conclusion

For these reasons, we conclude that the Board's written decision granting tentative approval of the current version of the Plan did not follow the requirements of Section 709(b) of the MPC because it did not set forth adequate reasons regarding the Plan's compliance with Section 401(F)(5), a mandatory requirement of the Zoning Ordinance. Accordingly, we are constrained to vacate the trial court's decision and remand this matter to the trial court to remand to the Board. On remand, the Board is limited to the record as it is presently constituted and is directed to render findings of fact and explain the reasons that it granted tentative approval of the Plan as to all criteria required by Section 401(F) of the Zoning Ordinance. The Board's findings must be sufficiently specific so as to comply with Section 709(b) of the MPC.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Gouwens and        :
Emily Gouwens,             :
              Appellants   :
                             :
        v.               :
                             :
Indiana Township Board of     :
Supervisors and Fox Chapel   :   No. 993 C.D. 2024
Estates, L.P.             :

## **O R D E R**

AND NOW, this 10th day of July, 2025, the June 26, 2024, order of the Court of Common Pleas of Allegheny County (trial court) is VACATED, and this matter is remanded to the trial court with directions to remand to the Indiana Township Board of Supervisors (Board) for the Board to issue a new decision in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge